

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**Nos. WR-93,807-01 & WR-93,807-02**

**EX PARTE ELMO DEWAYNE FLOWERS, Applicant**

**ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
CAUSE NOS. 12-CR-0609-83-1 & 12-CR-0610-83-1
IN THE 56TH DISTRICT COURT
GALVESTON COUNTY**

**SLAUGHTER, J., filed a dissenting opinion in which YEARY, J., joined.**

## DISSENTING OPINION

I dissent to the Court's decision to remand the applications to the trial court for further development of Applicant's claims when Applicant has failed to abide by the clear requirements of the Rules of Appellate Procedure governing post-conviction habeas applications. Applicant, who is represented by counsel, failed to file any specific factual allegations in his original application and failed to file any memorandum of law, instead

raising only generic allegations of ineffective assistance of trial counsel. The habeas court, understandably, found no disputed facts requiring resolution and recommended denial of relief based on Applicant's bare-bones application that failed to meet the basic pleading requirements for an Article 11.07 application. But now that the application and habeas court's recommendation to deny have been forwarded to this Court, Applicant has filed an amended application in the trial court including additional claims and factual allegations. He has also filed motions in this Court asking us to remand the applications, or, alternatively, to dismiss them without prejudice so that he may refile the applications and expand the record to allow for full consideration of his new claims. In essence, it appears that counsel failed to follow the rules and now wants a do-over. Though I acknowledge that prior opinions from this Court allow applicants to file amended or supplemental applications under some circumstances, I disagree that counsel should be permitted to game the system in this manner. Allowing counsel to file a clearly incomplete application which he may then freely amend even after the State has responded and the trial court has forwarded the application creates inefficiencies in the system and wastes judicial resources. Because I believe the Court's rules in this area need reexamination and should not be interpreted to permit a remand absent a showing of good cause for the delay in raising the additional allegations, I respectfully dissent.

## I.    Background

### A.  Trial and Guilty Pleas

Around ten years ago, Applicant Elmo Flowers was charged with two counts of aggravated assault with a deadly weapon for cutting two women—Mary Rawls and

Velmeshia Rawls[1]—with a knife as part of the same incident. *See* TEX. PENAL CODE § 22.02(a)(2). Because Applicant already had at least two prior felony convictions (attempted murder and retaliation), if convicted, he was facing a punishment range of 25 years to life in prison. *See id.* § 12.42(d).

Applicant initially pleaded "not guilty" to the charges, and a jury trial commenced on March 4, 2013. Victim Mary Rawls appeared for trial and was sworn in as a witness. The second victim, Velmeshia Rawls, however, did not appear to be sworn in for trial. In an attempt to secure her presence, the trial judge issued a writ of attachment. After selecting a jury, hearing opening statements, and after the testimony of a few witnesses, but before either Mary or Velmeshia was called to testify, Applicant entered into a plea agreement with the State. In exchange for pleading guilty to both charges, he received a 25-year sentence on each charge to run concurrently. The writ of attachment for Velmeshia Rawls was returned unexecuted. Applicant did not appeal his convictions.

### B.    Writ Applications

On April 18, 2022, Applicant, through habeas counsel, filed in the trial court initial applications for postconviction writs of habeas corpus for both cases—more than nine years after pleading guilty to the charges. In this initial pleading, he claimed that his pleas were involuntary based on trial counsel's ineffective assistance. While Applicant alleged that his trial counsel was deficient because he failed to act, Applicant did not identify any

---

[1] This victim's name is spelled two different ways throughout the record, as Velmeisha and Velmeshia. Because Velmeshia appears to be the predominant version, this is the spelling I will employ.

specific omissions or failures by trial counsel particular to these cases. Instead, his pleadings were entirely generic.[2] His pleadings also failed to mention or address any prejudice that he may have suffered. Applicant did not file any memorandum or additional information in support of the allegations.

On May 16, 2022, the State filed a response to Applicant's writ applications and served the response on habeas counsel. The State specifically noted that, based upon the applications' bare allegations and conclusory statements, "the record before this court is sufficient to enable the court to resolve this matter. Thus, there is no need for the court to issue any order designating issues of fact or for the court to convene any fact-finding hearing." That same day, the habeas judge, who was also the trial judge for the underlying

---

[2] Those allegations were:

1. Counsel failed to adequately advise Applicant how the law applied to the facts of the case, and to ensure that his plea was knowing and voluntary.

2. Counsel failed to make a meaningful effort to negotiate a plea bargain, to advise Applicant accurately concerning whether to accept a plea offer, and to advise Applicant regarding the existence of certain evidence prior to his plea.

3. Counsel failed to subject the State's case to meaningful adversarial testing.

4. Counsel failed to confer adequately with Applicant sufficiently to prepare a defense, and failed to conduct a meaningul [sic] and independent investigation of the facts, to interview both prosecution and defense witnesses, and to discover witnesses and evidence that could have aided in the preparation of Applicant's defense.

5. Counsel failed to conduct an adequate interview of Applicant, and to discover, request, obtain, and review evidence.

6. Counsel failed to consult expert witnesses and employe [sic] private investigators, and failed to provide accurate and complete advice concerning the defenses, remedies, rights, and options available to Applicant.

cases, entered findings of fact and conclusions of law recommending that relief be denied in each case. Writ records were then forwarded to this Court on May 20, 2022.

Applicant never filed any objections to the habeas court's findings of fact and conclusions of law. Instead, on June 6, 2022, more than a month after the initial writs were filed and three weeks after the habeas court entered its findings and conclusions, habeas counsel filed amended applications providing more detailed allegations to support his claim of trial counsel's ineffectiveness, and also raising an additional claim under *Brady v. Maryland*.[3] Specifically, in the amended filings, Applicant claims that a week before trial, victim Velmeshia Rawls changed her story and told the prosecutor that, on the date of the offense, she was trying to kill herself with a knife because she became upset when she discovered that Applicant was cheating on her. She claims that Applicant tried to stop her from harming herself and she was cut in the scuffle. Based on this new factual allegation, Applicant alleges that either the State failed to timely turn this information over to the prosecution, or, alternatively, his trial counsel failed to adequately bring this information to his attention prior to his guilty pleas. Applicant, however, does not provide any explanation for how this information would have affected his decision to plead guilty with respect to the assault on the second victim, who was also cut during the incident but apparently did not recant the accusations of assault against Applicant.

The day after filing the amended applications in the trial court, habeas counsel filed, with this Court, motions to remand the habeas applications or, alternatively, motions to

---

[3] 373 U.S. 83 (1963).

dismiss without prejudice so that he could refile the applications with the new allegations. In his motions, counsel complained that he had not included specific factual allegations in the initial filing because the specific facts would not fit on the Article 11.07 form. He also claimed that he had planned to file memoranda *after the State responded* but did not have time to do so before the habeas court issued its findings of fact and conclusions of law. Habeas counsel, however, gave no explanation as to why he failed to file his memoranda with the initial applications, nor did he explain why he failed to file objections to the habeas court's findings of fact and conclusions of law.

**II.      Texas Rule of Appellate Procedure 73: Postconviction Applications for Writs of Habeas Corpus**

Rule 73 of the Texas Rules of Appellate Procedure provides clear instructions for the filing and consideration of postconviction applications for writs of habeas corpus under Article 11.07 of the Code of Criminal Procedure. Rule 73.1 specifies the required form and contents of the application. TEX. R. APP. P. 73.1. In terms of content, the Rule requires the applicant to "provide all information required by the form. The form *must* include *all grounds* for relief and *set forth in summary fashion the facts supporting each ground*. Any ground not raised on the form will not be considered. Legal citations and arguments may be made in separate memorandum." TEX. R. APP. P. 73.1(c) (emphasis added). This memorandum "shall" also comply with the rules pertaining to length and format. TEX. R. APP. P. 73.1(d). Importantly, Rule 73.2 allows this Court to dismiss any application that does not comply with the rules. TEX. R. APP. P. 73.2.

Once the trial court issues its findings of fact and conclusions of law, Rule 73.4 affords an applicant ten days to file any objections. TEX. R. APP. P. 73.4(b)(2). The Rules also reflect time limits for resolution of an application, providing that on the 181st day from the date of receipt of the application by the State, the application must be forwarded to this Court unless an extension has been granted. *Id.* R. 73.4(b)(5); *see also* R. 73.5 (providing that "[w]ithin 180 days from the date of receipt of the application by the State, the convicting court shall resolve any issues that the court has timely designated for resolution.").[4]

After the application and writ record have been forwarded to this Court, Rule 73.7 governs consideration of new evidence. TEX. R. APP. P. 73.7. The Rule stipulates that a party seeking to have this Court consider evidence that was not filed in the trial court "*must comply* with the following procedures *or the evidence will not be considered.*" *Id.* (emphasis added). In cases like this one, where the Court has not yet ruled on, or otherwise filed and set the case, Rule 73.7(b) applies. This Rule specifies that the party wishing to include new evidence "must file in the Court of Criminal Appeals a motion to stay the proceedings pending the filing of the evidence in the trial court." TEX. R. APP. P. 73.7(b). Such a motion "should describe the evidence the party intends to file and explain its

---

[4] I note here that Article 11.07 itself contains several additional time limits: the State has 30 days after receipt of the application to file a response in the trial court, and the trial court then has an additional 20 days to enter any order designating issues. *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(b), (c). If the convicting court determines there are no controverted issues in need of resolution, then the clerk "shall immediately transmit to the Court of Criminal Appeals a copy of the application, any answers filed, and a certificate reciting the date upon which that finding was made. Failure of the court to act within the allowed 20 days shall constitute such a finding." *Id.* art. 11.07, § 3(c).

evidentiary value." *Id.* If this Court grants the motion, then it will specify a time frame for the new evidence to be filed in the trial court. *Id.* Taking the language from Rule 73.7 as a whole, the Rule is clear that this Court will not consider the new evidence if a party fails to file a motion to stay the proceedings.

The provisions in Rule 73 collectively reflect a clear purpose to ensure the efficient and speedy resolution of Article 11.07 applications. However, as discussed below, this Court's opinions permitting supplemental claims to be freely raised after the filing of the initial application undermine this purpose.

### III. Rules for Amended Applications / Supplemental Claims and Late-Stage Dismissals: *Ex parte Saenz* and *Ex parte Speckman*

In *Ex parte Saenz,* this Court held that applicants should be allowed to amend or supplement their initial applications even after an application has been forwarded to this Court, so long as this Court has not yet filed and set the case or ruled on its merits. 491 S.W.3d 819 (Tex. Crim. App. 2016). Specifically, *Saenz* provided that, "when an applicant files amended or supplemental pleadings raising additional claims before we have disposed of his pending application, we consider the merits of his claims, *so long as the pleadings comply with the rules and procedures* in Article 11.07 and Rule of Appellate Procedure 73.1, and so long as the claims are otherwise cognizable and ripe for review." *Id.* at 824-25 (emphasis added). In support, the Court pointed to cases reflecting a "historical willingness" to consider the merits of amended or supplemental pleadings in the initial habeas proceeding, based in part on the strict applicability of the bar on subsequent writ applications and the clear legislative intent to afford applicants a single "full bite" at the

habeas apple. *Id.* But the Court also cautioned that supplemental or amended pleadings would not be considered in all cases. An applicant's delay in taking action to amend or supplement the pleadings could, at least in theory, result in a supplemental filing being disallowed under the doctrine of laches. *Id. Saenz* also recognized that once this Court has filed and set a case for a decision on the merits, the Court would not consider supplemental pleadings at that late juncture. *Id.*

A year later, in *Ex parte Speckman*, the Court addressed the related topic of late-stage motions to dismiss a habeas application that has already been forwarded to this Court. 537 S.W.3d 49 (Tex. Crim. App. 2017). There, similar to the instant case, the application had been recommended for denial by the trial court and forwarded to this Court. But the Applicant then filed a motion to dismiss the application without prejudice so that he could re-file it with additional claims and allegations. The Court held that, as a general matter, *such motions should be denied absent a showing of good cause. See id.* at 52 (recognizing that interests in finality of convictions and preservation of judicial resources were "important considerations that weigh heavily against liberally permitting late-stage dismissals without a showing of good cause"). In the course of reaching this holding, *Speckman* stated that permitting late-stage dismissals "may encourage premature habeas applications that should not have been filed until after they had been fully researched and developed. *This Court has previously explained that an initial Article 11.07 application should present all possible claims for relief and should be filed only after an applicant has fully researched and developed all of his claims.*" *Id.* (emphasis added). But the Court also reiterated its holding from *Saenz*—that is, that as an alternative to

dismissal, an Applicant may pursue an amended or supplemental application to receive merits consideration of any claims or factual allegations he mistakenly omitted from the original filing. *Id.* at 55 (noting that, in *Saenz*, we had considered an additional claim raised in a supplemental pleading around one year after the initial application was filed). The Court observed that the holding permitting supplemental applications in *Saenz* was not without limitations, but generally speaking, *Saenz* "makes clear that, in most situations, an applicant may file an amended or supplemental application raising new claims during the time that his initial application remains pending. Supplementing or amending an existing application may be an adequate alternative to a late-stage dismissal without prejudice." *Id.* at 56.

IV.     **This Court should require a showing of good cause to justify a remand under these circumstances.**

While even *Saenz* noted that we should consider amendments "*so long as the pleadings comply with the rules and procedures* in Article 11.07 and Rule of Appellate Procedure 73.1," this Court has routinely ignored the compliance-with-the-rules-and-procedures aspect of this holding. The applicable procedural rules reflect the need for efficiency and conservation of judicial resources in the postconviction habeas fact-finding process. Applicants are required, to the best of their ability, to plead specific facts in support of the application. Grounds not properly raised "will not be considered." TEX. R. APP. P. 73.1. The rules also contain strict time limits for the filing of objections and the resolution of claims. *See id.* R. 73.4, 73.5. And, importantly, if an applicant wishes to have this Court consider new evidence *after* an application has already been forwarded from the trial court,

he must first seek permission from this Court by filing a motion for a stay of the proceedings, otherwise the new evidence "will not be considered." *Id.* R. 73.7.

What is the point of these provisions if an applicant is permitted to file an application with no specific factual allegations and then wait until after the application has been forwarded to file additional claims and allegations? Particularly in the case of an applicant who is represented by counsel, I cannot conceive of why this Court should condone such a practice, thereby causing the trial court and State to expend resources in responding to the initial application and entering findings, only to then permit a complete re-do of the proceedings by remanding for consideration of new claims that plainly should have been raised in the initial filing. This situation raises the precise concern we addressed in *Speckman* when we noted that allowing litigants a free do-over may encourage premature filings before the claims have been "fully researched and developed," in conflict with the clear pleading requirements governing Article 11.07 applications. *See Speckman,* 537 S.W.3d at 52. Such practices may also encourage gamesmanship. *Id.* at 52-53 (noting that procedural tactics such as a voluntary dismissal "could be misused by an applicant as a means of discovery of the State's response to his claims and of the habeas court's view of his claims, which he could then use to reformulate his position to attempt to circumvent those positions."). This Court should not condone practices that subvert the clear requirements in the applicable rules of appellate procedure, not to mention principles of finality, fairness, and efficiency.

Moreover, the Court's underlying reasoning in *Saenz* for allowing applicants to freely amend their applications was flawed from the outset. It is perhaps true that, in some

limited situations, permitting an application to be amended or supplemented after it has been forwarded to this Court is necessary for equitable reasons. But this should be the exception, not the general rule. Contrary to the Court's suggestion in *Saenz*, there is nothing unfair about expecting applicants to fully investigate their claims and bring their allegations at the initial pleading stage. Such a requirement in no way deprives them of their "full bite" at the habeas apple. If new facts emerge after the application has been filed and these new facts give rise to new allegations or claims, then that would likely justify an amended filing if an applicant can show that he exercised reasonable diligence in preparing his initial application. But if, as here, counsel is simply unprepared and chooses to file an incomplete application, I can see no reason why this Court should excuse an applicant from meeting basic pleading and procedural requirements under those circumstances. Freely permitting all applications to be amended or supplemented even after they have been forwarded, without requiring any showing as to why such supplementation or amendment is justifiable, removes any incentive for applicants to comply with the procedural rules in the first place. It also drags out the habeas fact-finding process and imposes a significant strain on judicial resources. Given these concerns and the circumstances before us, this Court should take this opportunity to revisit the *Saenz* rule and either require applicants to actually follow the Rules or at least require some minimal showing of good cause before an applicant is afforded a remand under these circumstances.

V.    **This Applicant should not receive a remand absent a showing of good cause.**

The instant situation exemplifies the problems with the Court's current approach. Here, Applicant filed bare-bones writ applications alleging ineffective assistance of trial counsel, without alleging any specific facts to support his claims. His allegations failed to mention or address prejudice at all. He did not file any memoranda or additional information in conjunction with his applications. And, after the trial court entered its findings of fact and conclusions of law rejecting the bare-bones application, Applicant failed to file any objections within ten days, as required by Rule. 73.4(b)(2). After the writ application and record were forwarded to this Court, Applicant never filed a motion to stay the proceedings pending the filing of his new evidence in the trial court, as required by Rule 73.7(b) for the consideration of new evidence. Instead, Applicant filed a Motion to Remand. In all of these ways, Applicant has wholly failed to comply with the applicable Rules of Appellate Procedure.

But, rather than requiring Applicant to follow the rules, this Court instead remands these applications, thereby requiring the habeas court and the State to start again from the beginning. As noted above, this system disincentivizes habeas attorneys and applicants from following the rules, as this Court will give them their desired relief anyway. In the absence of any showing of good cause as to why Applicant, through his counsel, failed to properly file his allegations when he filed the initial application, I would simply deny relief at this juncture.

For the foregoing reasons, I respectfully dissent.

FILED: December 21, 2022

PUBLISH